# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD VARGAS, JR., individually and as successor in interest to Edward Vargas, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>Defendants. | Case No.: 3:23-cv-01893-RBM-SBC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>[Docs. 10, 16] |

This 42 U.S.C. § 1983, Americans with Disabilities Act ("ADA"), and Rehabilitation Act ("RA") case concerns the care for Edward Vargas' ("Decedent") hypertensive cardiovascular disease ("HCD") in the Richard J. Donovan Correctional Facility ("Donovan") and the circumstances of his death on October 17, 2021. Decedent's son, Edward Vargas, Jr., as successor in interest, and Decedent's mother, Joan Vargas (collectively, "Plaintiffs"), bring claims against Defendants State of California ("State"), the California Department of Corrections and Rehabilitation ("CDCR") (collectively, "Municipal Defendants"), James Hill, S. Rodriguez, F. San Miguel, A. Velasquez, and Does 1–10. (Doc. 1 ("SAC") ¶¶ 12–18.)

Pending before the Court is Municipal Defendants' Motion to Dismiss the SAC

1  ("MTD 1"). (Doc. 10.) Plaintiffs filed an opposition to MTD 1 ("Opp. to MTD 1"). (Doc. 14.) Municipal Defendants filed a reply. (Doc. 15.)

Also pending before the Court is Municipal Defendants and Defendants Hill and Rodriguez's Motion to Dismiss Supervisory Liability Claims Against Defendant Warden Hill ("MTD 2"). (Doc. 16.) Defendants Miguel and Velasquez joined their MTD 2. (Doc. 17.) Plaintiffs filed an opposition to MTD 2 ("Opp. to MTD 2"). (Doc. 18.) Municipal Defendants and Defendants Hill and Rodriguez filed a reply. (Doc. 21.) Defendants Miguel and Velasquez joined their reply. (Doc. 22.)

In MTD 1, Municipal Defendants argue Plaintiff Edward Vargas, Jr.'s claims must be dismissed because Plaintiffs have not filed a declaration or affidavit under California Code of Civil Procedure § 377.32 establishing Plaintiff Edward Vargas, Jr. as Decedent's successor in interest. (Doc. 10 at 20–21.) Municipal Defendants argue Plaintiffs' ADA and RA claims (Fifth and Sixth Causes of Action) fail because Plaintiffs do not sufficiently allege (1) a substantial impairment, (2) discrimination because of a disability, (3) the programs for which he was denied access, and (4) to be entitled to monetary damages, facts to support intentional discrimination. (*Id.* at 21–27.) In MTD 2, Municipal Defendants and Defendants Hill, Rodriguez, Miguel, and Velasquez argue that the supervisory claim against Defendant Hill is conclusory and lacks specific factual allegations. (Doc. 16 at 11–13.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, MTD 1 (Doc. 10) is **GRANTED IN PART** and **DENIED IN PART**, and MTD 2 (Doc. 16) is **GRANTED**.

## I.     BACKGROUND

The facts and claims alleged in Plaintiffs' SAC are as follows.

### A. Pre-Incident

Decedent Edward Vargas, who was incarcerated at Donovan, was a 44-year-old son to Joan Vargas and father to Edward Vargas, Jr. (SAC ¶¶ 8–9, 24.) "Upon information and belief, [Decedent] had been experiencing a medical emergency for an appreciable

amount of time prior to his death." (*Id.* ¶ 25.) Decedent had a long-documented history of HCD. (*Id.*) Upon information and belief, Defendants Hill, Rodriguez, Miguel, and Velasquez were "well aware" of his serious medical condition. (*Id.*)

### B. Incident

On October 17, 2021, Defendants Rodriguez, Miguel and Velasquez ignored calls from other inmates for approximately 15 minutes concerning Decedent's medical emergency. (*Id.* ¶ 26.) At approximately 8:00 a.m., Decedent was found unresponsive in his cell at Donovan by Defendants Miguel and Velasquez with fresh abrasions to his body. (*Id.* ¶ 24.) Despite CPR efforts and transportation to the medical ward, Decedent died that same day. (*Id.*)

### C. Safety Checks

Upon information and belief, Defendants Rodriguez, Miguel, and Velasquez did not conduct proper Title 15 safety checks. (*Id.* ¶ 27.) As a result, Decedent's "dire need for immediate emergency medical intervention went unnoticed" by Defendants Rodriguez, Miguel, and Velsaquez, "who were responsible for monitoring and ensuring the welfare of all inmates, including [Decedent]." (*Id.* ¶ 28.) Had they conducted Title 15 safety checks in a timely manner, they would have discovered Decedent "in a distressed medical state and could have provided timely medical care which would have saved his life." (*Id.* ¶ 27.)

### D. Medical Care and Conditions of Confinement

Upon information and belief, custodial and medical staff at Donovan administered inadequate care to Decedent. (*Id.* ¶ 29.) Defendants Rodriguez, Miguel, Velasquez, and Does 1–10 "made the intentional decision of confining [Decedent] in such a condition which exposed him to significant risk of death or serious harm based upon his condition." (*Id.*)

### E. Fentanyl

Upon information and belief, Decedent could have died due to inadvertent exposure to Fentanyl. (*Id.* ¶ 31.) Defendants Rodriguez, Miguel, and Velasquez were "aware of the proliferation of contraband, including Fentanyl, in [Donovan], yet failed to take any action

to rectify or address the proliferation of contraband." (*Id.*) Decedent "was not a known drug user or involved in other illicit activity." (*Id.* ¶ 32.)

### F. Claims at Issue

#### 1. Supervisory Liability for Failure to Properly Train, Supervise, and Discipline (Fourth Cause of Action)

Defendant Hill and Does 8–10 "had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the STATE and CDCR." (*Id.* ¶ 70.) Defendant Hill and Does 8–10 "failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants S. RODRIGUEZ, F. SAN MIGUEL, and A. VELASQUEZ and DOES 1 through 10, and other STATE and CDCR personnel, with deliberate indifference to Plaintiff's, decedent Edward Vargas's, and others' constitutional rights." (*Id.* ¶ 71.) "Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent Edward Vargas of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent Edward Vargas of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Edward [Vargas's] rights, and in fact did cause the violation of decedent Edward Vargas's rights." (*Id.* ¶ 72.) "Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent Edward Vargas's rights." (*Id.*) "The unconstitutional customs, policies, practices, and/or procedures of Defendants STATE and CDCR, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants STATE and CDCR, including Defendants JAMES HILL and DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's, decedent Edward Vargas's, and

others' constitutional rights." (*Id.* ¶ 73.)  "The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other STATE and CDCR personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the STATE and CDCR, including Defendants JAMES HILL and DOES 8 through 10." (*Id.* ¶ 74.)

Upon information and belief, "the details of this incident have been revealed to Defendants JAMES HILL and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent Edward Vargas was not justified or necessary, but represented deliberate indifference to his rights to be protected and safe while in the STATE's custody and his rights to his serious medical needs." (*Id.*) "Notwithstanding this knowledge, on information and belief, JAMES HILL and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants S. RODRIGUEZ, F. SAN MIGUEL, and A. VELASQUEZ and DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Edward Vargas. By so doing, Defendants JAMES HILL and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants." (*Id.*)  Upon information and belief, "JAMES HILL and DOES 8 through 10 and other policymaking officers for the STATE and CDCR were and are aware of a pattern of misconduct and injury, and a code of silence, caused by STATE and CDCR custody and medical staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the STATE and CDCR." (*Id.*)  Hill and Does 8–10's actions were a moving force behind the deprivation of Decedent's constitutional rights. (*Id.* ¶ 75.)

**2. Violation of the Americans With Disabilities Act (Fifth Cause of Action)**

Upon information and belief, Decedent "was a disabled individual suffering from hypertensive cardiovascular disease, a physical impairment that substantially limited one or more major life activities." (*Id.* ¶ 84.)  "It was well documented that Decedent Edward Vargas was diagnosed with hypertensive cardiovascular disease and he required a

heightened level of medical care." (*Id.* ¶ 86.) Upon information and belief, "Defendants STATE and CDCR denied Decedent Edward Vargas benefits by not allowing Edward Vargas to engage in activities which would accommodate his hypertensive cardiovascular disease including physical exercise and other physical activities." (*Id.* ¶ 87.) "Defendant STATE and CDCR failed to make reasonable accommodations to Decedent Edward Vargas' medical needs based on his physical health.  The failure to provide critical medical information was a denial of the services program or activity based on his disability." (*Id.* ¶ 88.)  "Defendant STATE and CDCR denied Edward Vargas benefits of the services, programs or activities including a transfer to a medical facility." (*Id.* ¶ 89.) "Defendant STATE and CDCR denied Edward Vargas medical treatment by failing to take Decedent Edward Vargas to provide him with treatment for his hypertensive cardiovascular disease, thereby failing to accommodate Decedent Edward Vargas' disability, and denying him a service, benefit, or program." (*Id.* ¶ 90.)  There was an "outright denial of services" when Decedent exhibited obvious symptoms of medical distress, demonstrating Defendants were discriminating against Decedent due to his disability.  (*Id.* ¶ 91.)  Defendants State and CDCR were deliberately indifferent because they had "actual knowledge of the substantial risk of harm to Decedent Edward Vargas from his serious diagnosed condition and they responded with deliberate indifference by failing to communicate or document his condition; failing to place him in Medical where he could be watched; and failing to provide him medical care when Decedent Edward Vargas was in medical distress." (*Id.* ¶ 92.) "Defendants STATE and CDCR failed to conduct any self-evaluation of procedures and training for its personnel about how to handle encounters with persons who have a physical illness or another disability." (*Id.* ¶ 94.)

### 3. Violation of the Rehabilitation Act (Sixth Cause of Action)

"Defendants STATE and CDCR violated the Rehabilitation Act by failing to make reasonable accommodations to the needs of Decedent Edward Vargas, a disabled person. It was a reasonable accommodation to transfer a patient hypertensive cardiovascular disease to a medical health facility where he could receive necessary services." (*Id.* ¶ 102.)

"Employees of STATE and CDCR were deliberately indifferent to Decedent Edward Vargas' serious medical condition. They failed to consider obvious symptoms of Decedent Edward Vargas' physical health condition." (*Id.* ¶ 103.) "Instead of providing Decedent Edward Vargas with adequate medical services and fair treatment, Defendants [sic] STATE and CDCR refused to provide him with medical care as his condition deteriorated." (*Id.* ¶ 104.) "There were medical services readily available to Decedent Edward Vargas, but Defendants STATE and CDCR failed to properly house Decedent Edward Vargas in the Richard J. Donovan Correctional Facility, where Decedent Edward Vargas could be monitored and humanely cared for." (*Id.* ¶ 105.) "Defendants STATE and CDCR knew of the substantial risk of harm to Decedent Edward Vargas from his serious, diagnosed condition and they responded with deliberate indifference by failing to communicate or document his condition; failing to place him in Medical where he could be watched; and failing to provide him medical care when Decedent Edward Vargas was in medical distress." (*Id.* ¶ 106.) "Defendants STATE and CDCR violated the Rehabilitation Act by failing to conduct any self-evaluation of procedures and training for its personnel about how to handle communications with jails regarding patients who have a physical medical condition or another disability." (*Id.* ¶ 107.) "Defendants STATE and CDCR violated the Rehabilitation Act by failing to conduct any self-evaluation of procedures and training for its personnel about how to handle encounters with persons who have a physical medical condition or another disability." (*Id.* ¶ 108.)

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). An action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### III.   DISCUSSION

As a preliminary matter, Municipal Defendants move to dismiss any direct claims under the Eighth and Fourteenth Amendments against them as barred by Eleventh Amendment immunity. (Doc. 10 at 27–28.) Plaintiffs clarified that they are not raising Eighth and Fourteenth Amendment claims against Municipal Defendants. (Doc. 14 at 14.) Accordingly, the section of MTD 1 concerning Eighth and Fourteenth Amendment claims against Municipal Defendants is **DENIED AS MOOT**.

Moving onto the merits, the Court will first discuss whether Plaintiff Edward Vargas, Jr., as an alleged successor in interest, has sufficiently complied with California Code of Civil Procedure 377.32. Then, the Court will discuss Plaintiffs' supervisory liability (Fourth Cause of Action), ADA (Fifth Cause of Action), and RA (Sixth Cause of Action) claims.

**A. Successor In Interest (MTD 1)**

Municipal Defendants argue Plaintiff Edward Vargas, Jr.'s claims must be dismissed because Plaintiffs have not filed a declaration or affidavit under California Code of Civil Procedure § 377.32 establishing Plaintiff Edward Vargas, Jr. as Decedent's successor in interest. (Doc. 10 at 20–21.) Plaintiffs respond that a declaration or affidavit is not a prerequisite to filing or continuing an action under § 377.32 and that Plaintiffs will file a § 377.32 declaration promptly. (Doc. 14 at 9–10.) Municipal Defendants reply that Plaintiffs must file such a declaration or affidavit to continue this action and establish standing to bring any survivor claims on behalf of Decedent. (Doc. 15 at 2–4.)

Under California Code of Civil Procedure § 377.32(a), a "person who seeks to commence an action or proceeding or to continue a pending action or proceeding as the decedent's successor in interest under this article, shall execute and file an affidavit or a declaration under penalty of perjury under the laws of this state" with numerous specific requirements. Under California Code of Civil Procedure § 377.32(c), "[a] certified copy of the decedent's death certificate shall be attached to the affidavit or declaration."

The Court has not identified any Ninth Circuit case directly addressing whether a plaintiff proceeding as a successor in interest must file a § 377.32 declaration or affidavit to commence an action. District courts in this Circuit also appear split on the issue. *See Kirby v. AT&T Corp.*, Case No. 3:21-cv-01680-BEN-BGS, 2022 WL 1227993, at *1 (S.D. Cal. Apr. 26, 2022) (dismissing case and finding the process of submitting an affidavit under § 377.32 concerns a procedural rule, but the content concerns a substantive rule, and thus the plaintiff must demonstrate compliance with § 377.32 for the suit to proceed); *Est. of Merlin Factor v. Cnty. of San Bernardino*, Case No. ED CV 14-01289 DMG (AGRx), 2015 WL 13916251, at *4 (C.D. Cal. Apr. 8, 2015) ("Section 377.32 does not require an affidavit as condition precedent to commencing or continuing action, *see Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1523–24 (1995), but filing the affidavit is mandatory to establish standing."); *but see Bhandari v. Nat'l City*, Case No. 3:21-cv-01652-BTM-MDD, 2022 WL 1308034, at *3 (S.D. Cal. May 2, 2022) (explaining there is no statutory command for a § 377.32 declaration to be filed with a complaint); *Abrego v. City of Los Angeles*, Case No. CV 15-00039-BRO (JEMx), 2016 WL 9450679, at *5 (C.D. Cal. Sept. 23, 2016) (explaining § 377.32 makes no reference to a cutoff date and is not indicative of a condition precedent to filing the lawsuit).

§ 377.32 does not set a timeframe for the filing of the successor in interest affidavit or declaration. Thus, it is premature to dismiss Plaintiff Edward Vargas, Jr.'s successor in interest claims. However, establishing whether Plaintiff Edward Vargas, Jr. is a proper successor in interest is necessary to resolving any issues concerning his standing to bring claims in this case. *See Est. of Merlin Factor*, 2015 WL 13916251, at *4. Thus, the Court

**ORDERS** Plaintiffs to comply with § 377.32 on or before the deadline for filing a third amended complaint or risk dismissal of Plaintiff Edward Vargas, Jr.'s claims as a successor in interest.

### B. Supervisory Liability (Fourth Cause of Action) (MTD 2)

Municipal Defendants and Defendants Hill, Rodriguez, Miguel, and Velasquez argue that the supervisory claim against Defendant Hill is conclusory and lacks specific factual allegations. (Doc. 16 at 11–13.) Plaintiffs respond that they have pled sufficient facts for a supervisory claim and now argue Defendant Hill should have known Defendants Rodriguez, Miguel, and Velasquez did not conduct proper Title 15 safety checks. (Doc. 18 at 9–11.) Municipal Defendants and Defendants Hill, Rodriguez, Miguel and Velasquez reply that Plaintiffs' assertions against Defendant Hill are bare assertions that are nothing more than a formulaic recitation of the elements of a civil rights claim and do not establish a causal link between Defendant Hill's conduct and the alleged violation of Decedent's constitutional rights. (Doc. 21 at 2–5.)

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection can be established "by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)). It can also be established by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207–08 (quoting *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)).

"A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in

the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). A supervisor may be liable under § 1983 for failing to train subordinates when the failure amounts to deliberate indifference. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (citing *Harris*, 489 U.S. at 388). A supervisor can also be liable for "implement[ing] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen*, 885 F.2d at 646 (citation omitted).

Plaintiffs do not assert that Defendant Hill was personally involved in Decedent's alleged constitutional deprivation. Thus, the question is whether there is a sufficient causal connection between Defendant Hill's alleged wrongful conduct and Decedent's alleged constitutional violation.

Plaintiffs allege Defendant Hill was aware of Decedent's HCD. (SAC ¶ 25.) Plaintiffs allege Defendant Hill was responsible for hiring, training, supervising, disciplining, etc. employees and agents of Municipal Defendants and failed to do so with deliberate indifference to Decedent's constitutional rights. (*Id.* ¶¶ 70–72.) Plaintiffs allege Defendant Hill directed, encouraged, allowed, or ratified unconstitutional customs, policies, practices or procedures and employees' actions in this case with a deliberate indifference to Decedent's constitutional rights. (*Id.* ¶¶ 73–74.) Plaintiffs allege Defendant Hill learned the details of this incident and approved or ratified the conduct of Defendants Rodriguez, Miguel, Velasquez, and Does 1–10. (*Id.* ¶ 74.) Plaintiffs also allege Defendant Hill was aware of a pattern of misconduct, injury, and a code of silence caused by Municipal Defendants' custody and medical staff yet failed to discipline them or institute new procedures and policy. (*Id.*) Lastly, Plaintiffs allege Defendant Hill's actions were a moving force behind the deprivation of Decedent's constitutional rights. (*Id.* ¶ 75.)

Plaintiffs' supervisory allegations in this case are conclusory. Even if Defendant Hill was aware of Decedent's HCD, Plaintiffs fail to allege specific facts concerning what actions or inactions Defendant Hill took that demonstrated a deliberate indifference to

11

1 | Decedent's HCD and were the moving force behind the violation of Decedent's constitutional rights. Plaintiffs have not specifically alleged facts showing Defendant Hill engaged in "a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Hydrick*, 500 F.3d at 988. Nor have Plaintiffs specifically alleged Defendant Hill knowingly refused to terminate a series of acts he knew or should have known would cause Decedent's injury. *See Starr*, 652 F.3d at 1207–08. Nor have Plaintiffs specifically alleged how Defendant Hill failed to train, supervise, or discipline Municipal Defendants' employees for conduct showing a deliberate indifference to the constitutional rights of others. *See id.* at 1208; *Canell*, 143 F.3d at 1213. Nor have Plaintiffs specifically alleged Defendant Hill implemented a deficient policy that is itself a repudiation of constitutional rights and the moving force behind Decedent's alleged constitutional violation. *See Hansen*, 885 F.2d at 646. Nor did Plaintiffs plead specific factual allegations in the SAC that Defendant Hill knew employees were not conducting Title 15 safety checks and deliberately failed to act to address such a deficiency. Lastly, while Plaintiffs do allege Defendant Hill was made aware of this incident, they fail to plead specific factual allegations concerning how Defendant Hill approved or ratified the actions of Defendants Rodriguez, Miguel, Velasquez, and Does 1–10.

Thus, Defendants' MTD 2 is **GRANTED**.

**C. ADA and RA (Fifth and Sixth Causes of Action) (MTD 1)**

Municipal Defendants argue Plaintiffs' ADA and RA claims (Fifth and Sixth Causes of Action) fail because Plaintiffs do not sufficiently allege (1) a substantial impairment, (2) discrimination because of a disability, (3) the programs Decedent was denied access to, and (4) to be entitled to monetary damages, facts to support intentional discrimination. (Doc. 10 at 21–27.) Plaintiffs respond that they have sufficiently alleged each of these requirements. (Doc. 14 at 10–14.) Municipal Defendants reply that Plaintiffs rely on facts not alleged in the SAC, conflate inadequate treatment with discrimination because of disability, fail to identify notice of reasonable accommodations, and fail to identify

programs Decedent was denied access to. (Doc. 15 at 4–8.)

To begin, the parties do not dispute that both ADA and RA claims are subject to the same standard. (*See* Doc. 10 at 21 n.4; Doc. 14 at 10.) *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1135–36 (9th Cir. 2001) (explaining Title II of the ADA remodeled after § 504 of RA and elements do not differ in material respect); *see also Wong v. Regents of University of California*, 192 F.3d 807, 822 n.34 (9th Cir. 1999) ("Courts repeatedly have noted that despite this slight difference in terminology, the same analysis applies to claims under both Acts."); *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act."). Thus, the Court analyzes these claims together under the same standard.

Under 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." "To prevail under Title II, the plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability." *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014) (citing *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)). "Title II authorizes private suits for money damages." *Id.* (citing 42 U.S.C. § 12133 and *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)).

### 1. Qualified Individual with Disability

Municipal Defendants argue Plaintiffs fail to allege Decedent's HCD substantially limited any major life activity as required for a qualified disability under the ADA. (Doc. 10 at 22–23.) Plaintiffs respond that Decedent's HCD substantially limited more than one major life activity because it had no cure and impacted his ability to properly breathe and limited his mobility. (Doc. 14 at 11–12.) Municipal Defendants respond that those

allegations are not in the SAC.  (Doc. 15 at 4.)

"A disability is 'a physical or mental impairment that substantially limits one or more major life activities of [the] individual [who claims the disability],' or 'a record of such an impairment,' or 'being regarded as having such an impairment.'" *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (citing 42 U.S.C. § 12102(1)).  "The ADA provides a nonexhaustive list of 'major life activities.'  Such activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* (citing 42 U.S.C. § 12102(2)(A)).  "An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." *Id.* (citing 42 U.S.C. § 12102(4)(C)).  According to Equal Employment Opportunity Commission ("EEOC") regulations, "[a]n impairment is a disability ... if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.  An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* (citing 29 C.F.R. § 1630.2(j)(1)(ii)).

Plaintiffs allege Decedent had a long-documented history of HCD.  (*See* SAC ¶ 25.)  Plaintiffs do not allege in the SAC that Decedent's HCD was uncurable, impacted his ability to properly breathe, and limited his mobility.  Accordingly, Plaintiffs have failed to sufficiently allege *how* Decedent's HCD substantially limited his ability to perform one or more major life activities.  Thus, Plaintiffs have not sufficiently alleged Decedent was a qualified individual with a disability.

### 2. Services, Programs, or Activities

Municipal Defendants argue Plaintiffs fail to identify which services, programs, or activities Decedent was denied due to his disability. (Doc. 10 at 24–26.)  Plaintiffs respond that Decedent was denied programs and services including physical exercise programs to accommodate his HCD and a transfer to a medical facility. (Doc. 14 at 13–14.)  Municipal

Defendants respond that these allegations are conclusory and fail to describe a needed reasonable accommodation and whether it was requested and denied. (Doc. 15 at 7–8.)

In *Armstrong v. Schwarzenegger*, the Ninth Circuit stated that "[a]lthough we have noted that 'incarceration itself is hardly a 'program' or 'activity' to which a disabled person might wish access,' we have made clear that the ADA entitles inmates to receive the 'benefits' of the incarcerating institution's programs and services without facing discrimination on account of a disability." 622 F.3d 1058, 1068 (9th Cir. 2010) (citations omitted). The Ninth Circuit explained the Supreme Court has rejected a contrary argument because "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners." *Id.* (quoting *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) ("[A]lthough '[i]ncarceration itself is hardly a 'program' or 'activity' to which a disabled person might wish access,' mental health services and other activities or services undertaken by law enforcement and provided by correctional facilities to those incarcerated are 'services, programs, or activities of a public entity' within the meaning of the ADA.") (quoting *Armstrong v. Wilson*, 124 F.3d 1019, 1023–24 (9th Cir. 1997)).

Here, Plaintiffs have identified programs, services, or activities within the meaning of the ADA, including failing to allow Decedent to engage in physical exercise or physical activities, failing to transfer him to a medical facility, and failing to transfer him to Medical where he could be observed. (*See* ¶¶ 87, 89, 92.) *See Armstrong*, 622 F.3d at 1068; *see also Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) ("Rather than determining whether each function of a city can be characterized as a service, program, or activity for purposes of Title II, however, we have construed 'the ADA's broad language [as] bring[ing] within its scope 'anything a public entity does.'") (quoting *Lee*, 250 F.3d at 691). Thus, Plaintiffs have sufficiently identified programs, services, or activities under the ADA that Decedent was excluded from or denied.

However, Plaintiffs may not state an ADA or RA claim due to custodial or medical

staff's providing inadequate care to Decedent or failing to provide treatment for his HCD. (*See* SAC ¶¶ 29, 88, 90.)  *See Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability.") (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners .... The ADA does not create a remedy for medical malpractice.")).

### 3. Because Of Disability

Municipal Defendants argue Plaintiffs fail to plead sufficient facts to show Decedent was discriminated against because of his disability.  (Doc. 10 at 23–24.)  Plaintiffs respond that Decedent was discriminated against because Municipal Defendants knew of his HCD and that it required obvious accommodations.  (Doc. 14 at 12–13.)  Municipal Defendants respond that Plaintiffs conflate deliberate indifference with the requirement that discrimination be 'because of' disability under the ADA and RA.  (Doc. 15 at 4–5.)

Plaintiffs must allege sufficient facts that Decedent was denied access to programs, services, or activities because of his disability.  *See Simmons*, 609 F.3d at 1021–22 (finding plaintiff failed to raise a triable issue of fact as to whether decedent's depression was the motivating factor in excluding him from programs, services, and activities); *Marlor v. Madison Cnty.*, 50 F. App'x 872, 873 (9th Cir. 2002) ("Relief is not available to Marlor under the ADA because he failed to raise a genuine issue of material fact that he was denied crutch tips or access to the jail's programs or activities because of his disability."); *see also Arreola v. California Dep't of Corr. & Rehab.*, Case No. 16-cv-03133-JD, 2017 WL 1196802, at *2 (N.D. Cal. Mar. 31, 2017) ("Simply alleging a need for services is not enough.  Arreola must plausibly allege that he was denied benefits or programs, or discriminated against, because of a disability.").

Plaintiffs' only allegation concerning this prong is that there was an "outright denial of services" when Decedent exhibited obvious symptoms of medical distress, demonstrating Defendants were discriminating against Decedent due to his disability.  (*See*

*id.* ¶ 91.) Plaintiffs fail to plead sufficient facts that any Defendant, even if aware of Decedent's HCD, denied him access to physical activities, a transfer to a medical facility, or a transfer to Medical *because of* his HCD. Plaintiffs in their Opp. to MTD 1 also appear to confuse this prong with that concerning deliberate indifference (*see* Doc. 14 at 12–13), as discussed below. Thus, Plaintiffs fail to sufficiently plead Decedent was excluded from or denied programs, services, or activities because of his HCD.

### 4. Monetary Damages

Municipal Defendants argue Plaintiffs cannot request monetary relief because Plaintiffs fail to allege they intentionally discriminated against Decedent by displaying deliberate indifference. (Doc. 10 at 26–27.) Plaintiffs argue Municipal Defendants were deliberately indifferent because they were on notice of his HCD and that it required obvious accommodations, but they failed to communicate or document his condition or place him in Medical. (Doc. 14 at 12–13.) Plaintiffs also argue Municipal Defendants' discrimination includes failure to make reasonable accommodations, including training on how to deal with the physically ill, specialized training of CDCR staff, heightened level of medical care, and diligent surveillance. (*Id.* at 13.)

"Recovery of damages under Title II requires a showing of intentional discrimination." *Cohen*, 754 F.3d at 695 n.6 (citing *Duvall*, 260 F.3d at 1138). "The plaintiff must prove that the defendant public entity acted with 'deliberate indifference,' meaning that it knew that harm to a federally protected right was substantially likely and failed to act upon that knowledge." *Id.* (citing *Duvall*, 260 F.3d at 1139). The first requirement is met "[w]hen the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation)." *Duvall*, 260 F.3d at 1139. The second requirement is met where there is a failure to act that is the "result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

Plaintiffs allege Municipal Defendants were deliberately indifferent because they had actual knowledge of a substantial risk of harm to Decedent due to his HCD. (*Id.* ¶ 92.)

17

And that Municipal Defendants failed to communicate or document Decedent's condition, failed to place him in Medical where he could be watched, and failed to provide him medical care when he was in medical distress. (*Id.*)

On the first deliberate indifference prong, Plaintiffs must show Decedent "alerted the public entity to his need for accommodation" or "the need for accommodation is obvious" or "required by statute or regulation." *Duvall*, 260 F.3d at 1139. Even if Plaintiffs allege certain Defendants were aware of Decedent's HCD (*see* SAC ¶ 25), Plaintiffs have not alleged sufficient facts to show that Decedent notified Municipal Defendants of his need for physical activity, the need for his HCD to be documented or monitored in Medical, or his need for a transfer to a medical facility. Nor have Plaintiffs pled sufficient facts to show that such accommodations were obvious or required by regulation or statute, or that such accommodations are reasonable. *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1215 (9th Cir. 2008) ("Generally, public entities must 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.") (citations omitted). Because Plaintiffs fails on the first deliberate indifference prong, he necessarily fails on the second prong as well and cannot establish deliberate indifference.

Thus, Municipal Defendants' MTD 1 is **GRANTED** with respect to Plaintiffs' ADA and RA claims.

**D. Leave to Amend**

Leave to amend is generally granted unless the Court harbors concerns "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). While the Court is not certain at this stage that Plaintiffs' Fourth, Fifth, and Sixth Causes of Action are futile, the Court notes that this is Plaintiffs' Second

Amended Complaint. At the same time, it is Plaintiffs' first complaint subject to motions to dismiss. The Court will grant leave to amend these claims, but Plaintiffs are warned that further leave to amend will not be granted liberally.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** MTD 1 and **GRANTS** MTD 2 (Docs. 10, 16), both **with leave to amend**. Plaintiffs may file a third amended complaint on or before **July 19, 2024**.

**IT IS SO ORDERED.**

DATE:  July 3, 2024

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE